IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-240-FL

| | |
|---|---|
| RAEIS CONSTRUCTORS, LLC, | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) |
| CIRCLE K STORES, INC., | ) ORDER |
| Defendant/Counter-Plaintiff/ Third-Party Plaintiff, | ) |
| v. | ) |
| MECO BUILDERS, INC., | ) |
| Third-Party Defendant. | ) |

This matter is before the court on defendant's motion to dismiss for failure to state a claim (DE 33), third-party defendant's motion to dismiss for lack of jurisdiction and to compel arbitration (DE 45), and plaintiff's notice of adoption of third-party defendant's motion to dismiss (DE 57), which the court construes as including a motion to compel arbitration and for voluntary dismissal of its claims in favor of arbitration. The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendant's and third-party defendant's motions are granted, and plaintiff's motion is denied.

## STATEMENT OF THE CASE[1]

Plaintiff commenced this action on May 25, 2018, and filed a first and second amended complaint on June 29, 2018, asserting a claim of fraud against defendant arising from plaintiff's

---

[1] The court sets forth a detailed procedural history, where such details are pertinent to the analysis herein.

provision of labor and materials for the construction of a Circle K store in Hope Mills, North Carolina (the "store"). Plaintiff asserted diversity jurisdiction, sought damages in excess of $75,000.00, and a trial by jury.

Defendant initially moved to dismiss the amended complaint on October 3, 2018, for failure to state a claim. Plaintiff responded in opposition and moved for leave to file a third amended complaint. The court allowed plaintiff to file its third amended complaint and found moot defendant's initial motion to dismiss.

Plaintiff filed the operative third amended complaint on January 28, 2019, asserting claims of breach of contract and a claim of quantum meruit/unjust enrichment, again on the basis of plaintiff's provision of labor and materials for the construction of the store. Plaintiff no longer asserts a claim of fraud. Plaintiff seeks damages in excess of $377,357.00, and trial by jury.

Defendant filed the instant motion to dismiss on February 25, 2019, as corrected February 26, 2019, relying upon 1) publications by the North Carolina Licensing Board for General Contractors and 2) an "Agreement for Construction – Lump Sum Contract." (DE 34-3). Defendant also filed an answer with counterclaim for breach of contract against plaintiff, as well as a third-party complaint for breach of contract against third-party defendant.

In its counterclaim and third-party complaint, defendant asserts that plaintiff and third-party defendant breached contracts for the construction of the store, causing damages for completion costs, delay costs, legal fees, and expenses. In support thereof, defendant relies upon 1) an "Agreement for Construction – Lump Sum Contract" with each plaintiff and third-party defendant (DE 32-2, 32-3); 2) a project engineer field report; 3) waiver of lien documents and releases of liens; and 4) termination letters.

Plaintiff responded in opposition to defendant's instant motion to dismiss for failure to state a claim on April 1, 2019, and defendant filed a reply in support thereof on April 15, 2019. In

the meantime, third-party defendant filed the instant motion to dismiss for lack of jurisdiction and motion to compel arbitration on April 11, 2019.

Upon consent motion of all parties, on May 20, 2019, the court stayed all proceedings, including briefing on third-party defendant's motion and ruling on defendant's motion to dismiss, for 90 days to allow the parties to engage in mediation.

The case returned from mediation, resulting in impasse. On August 12, 2019, defendant filed a response to third-party defendants motion to dismiss for lack of jurisdiction and to compel arbitration, relying upon 1) AAA Arbitration Rules, 2) Rules of Arbitration in North Carolina courts, and 3) the "Agreement for Construction – Lump Sum Contract" between defendant and third-party defendant. (DE 55-2). Third-party defendant replied in support of its motion on August 14, 2019.

On August 15, 2019, plaintiff filed the instant notice, adopting third-party defendant's motion to dismiss and to compel arbitration. Upon consideration thereof, on August 22, 2019, the court entered the following text order construing the notice as including the instant motion for voluntary dismissal:

> TEXT ORDER regarding plaintiff's 57 Notice of adoption of motion to dismiss and compel arbitration. The court construes plaintiff's notice, in part, as a motion under Federal Rule of Civil Procedure 41(a)(2) for voluntary dismissal of its claims in favor of arbitration of the same, where it asserts "all of the claims of all of the parties in this lawsuit . . . are arbitrable." (DE57 at 5). Defendant Circle K. Stores, Inc., is DIRECTED to file a response to plaintiff's notice, so construed, within 14 days of the date of this order.

Defendant responded to the court's text order on September 19, 2019, urging the court to find that plaintiff waived its right to proceed to arbitration, and urging the court to grant its motion to dismiss. Plaintiff replied to defendant's response on September 23, 2019.

3

## STATEMENT OF FACTS

The court summarizes in turn below the factual allegations in the complaint,[2] the factual allegations of the third-party complaint, and the alleged facts pertaining to the arbitration agreements pertinent to the instant motions.

A.  Complaint

Plaintiff alleges that it is a limited liability company with a principle place of business in Georgia and defendant is a Texas corporation with principal place of business in Arizona.

In February 2017, Mike Raeisghasem ("Raeishghasem"), plaintiff's owner, met with defendant's managers, Dennis Patterson ("Patterson") and Wes Williams ("Williams"). Williams suggested that plaintiff start bidding projects to build Circle K stores in North Carolina. Raeisghasem informed Williams and Patterson, allegedly, that "he was not a licensed general contractor in the state of North Carolina, but that he would look into the possibility of getting licensed." (Compl. ¶ 8).

On June 10, 2017, Williams contacted Raeisghasem and asked that plaintiff bid for the construction of the store. According to plaintiff, Raeisghasem informed Williams that "he had not taken any steps towards getting licensed in North Carolina." (Id. ¶ 10). Williams told Raeisghasem, allegedly, that "his lack of a license was not an issue and that he should bid the Project and apply for his license and by the time construction started everything would be in order." (Id. ¶ 11).

On June 28, 2017, plaintiff submitted a bid for construction of the store (the "Project"). On July 11, 2017, defendant informed plaintiff that it was the successful bidder, and plaintiff

---

[2] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations to the record are to the operative third amended complaint (DE 30), unless otherwise specified.

allegedly "entered into an 'Agreement for Construction – Lump Sum Contract'" with defendant relating to the Project. (Id. ¶ 14).

Prior to entry into said contract, Raeisghasem allegedly informed Williams that "he was still waiting on the State of North Carolina to issue [plaintiff] a $500,000 project limit general contractor's license." (Id. ¶ 15). Williams allegedly told Raeisghasem that "it was not an issue, and as long as the State issued the license before construction began [plaintiff] would be in compliance with North Carolina law." (Id.).

According to the complaint, defendant was "aware that [plaintiff] was unlicensed when it signed [said contract] and that when North Carolina ultimately issued [plaintiff's] license it would be limited to $500,000." (Id. ¶ 16). According to the complaint, defendant "misrepresented the value of the [P]roject on [a] permit application because it knew the city of Hope Mills would not allow Raeis to pull a permit for a project valued in excess of $500,000." (Id. ¶ 17).

On July 31, 2017, the town of Hope Mills issued a building permit, but the State of North Carolina "still had not issued [plaintiff's] general contractor license." (Id. ¶ 19). Defendant allegedly "was in a hurry to begin construction and was pressuring [plaintiff] to get the licensing and permitting issues fixed and get started on the work." (Id. ¶ 20).

July 27 2017, Raeisghasem contacted his previous employer, the owner of third-party defendant, which has an unlimited North Carolina General Contractor's License, and contemplated an agreement whereby third-party defendant "would pull the permit and oversee and supervise the [P]roject on a cost basis." (Id. ¶ 21). Third-party defendant allegedly "was initially hesitant about this arrangement. However, [third-party defendant and plaintiff] communicated the proposed agreement via email to [Patterson and Williams]." (Id. ¶ 22). Patterson and Williams allegedly "stated that the arrangement was a good solution and that it would put [plaintiff and third-party defendant] in compliance with the North Carolina General Contractor Statute." (Id.).

5

Plaintiff then began work on the Project. According to the complaint, plaintiff "did good work on the store and performed its work as agreed." (Id. ¶ 24). After plaintiff had "substantially completed the store," defendant allegedly "refused to pay it the hundreds of thousands of dollars it owed and forced [plaintiff] to leave the job." (Id. ¶ 25). According to the complaint, plaintiff furnished materials, labor, and construction, valued at $377,357.00, plus interest, after applying all payments and offsets. (Id. ¶ 33).

B.  Third-Party Complaint

The third-party complaint alleges facts regarding the Project from defendant's perspective, in support of defendant's counterclaim and third-party claim for breach of contract. According to defendant, upon recommendation of defendant's architect, Raeishghasem submitted a preliminary bid for the Project on June 16, 2017, and a formal bid on June 28, 2017. On June 30, 2017, defendant allegedly "awarded the [P]roject to [plaintiff] and sent a contract to [plaintiff] for the amount of [plaintiff's] bid, $1,659,940.00." (Third-Party Compl. ¶ 9). This contract, titled "Agreement for Construction – Lump Sum Contract," dated July 7, 2017, between plaintiff and defendant (hereinafter, "plaintiff's contract"), is attached to the third-party complaint. (DE 32-2 at 1).

According to defendant, Raeishghasem emailed Williams on July 24, 2017, stating that he was "getting the licensing items worked out and that he was planning to go to Hope Mills the following morning for permits." (Id. ¶ 13). On July 31, 2017, however, the Town of Hope Mills allegedly issued a permit identifying "Meco Builders" as the contractor for the Project. (Id. ¶ 15). According to defendant, that same date, Raeisghasem allegedly told Williams that "he had gotten his license and that work on the Project could begin," but "Raeisghasem did not tell [Williams] that he had used Meco's license on the permit for the Project." (Id. ¶ 16).

6

In early September 2017, an employee with third-party defendant allegedly began working on the Project as a project manager. When Williams questioned this, Raeisghasem allegedly told Williams that plaintiff and third-party defendant "were essentially one and the same, but offered no further explanation." (Id. ¶ 22). According to defendant, on October 10, 2017, Town of Hope Mills officials told plaintiff, defendant, and third-party defendant that plaintiff was not qualified to be a general contractor on the Project, only third-party defendant was qualified, and that third-party defendant must be acting general contractor on the project. (Id. ¶ 25). Plaintiff, defendant, and third-party defendant allegedly agreed that "a new contract would be entered into whereby [defendant] would engage [third-party defendant] to act as the general contractor on the project." (Id.). Defendant and third-party defendant allegedly entered into an "Agreement for Construction – Lump Sum Contract" on October 10, 2017, a copy of which is attached to the third-party complaint. (Id. Ex. 2) (hereinafter, the "third-party defendant's contract").

According to defendant, on October 23, 2017, Town of Hope Mills questioned why plaintiff was "still involved in the Project when [it] did not have proper licensing to act as a contractor on the Project." (Id. ¶ 29). Allegedly, "[o]n October 24, 2017, [defendant] decided to terminate its relationships with [plaintiff and third-party defendant] because both contractors had made material representations to [defendant]" and they "were failing to timely complete the Project, had materially breached their contracts, and jeopardized the success of the Project." (Id. ¶ 31). According to defendant, "[a]t the time of termination, [plaintiff] had been paid $182,700.00 towards the contract price of $1,659,940.00; [h]owever, [plaintiff] had failed to pay a number of suppliers and subcontractors that had performed work on the Project," and plaintiff and third-party defendant "had only partially completed work on the Project and were substantially behind schedule." (Id. ¶ 32). Defendant allegedly retained "a completion contractor to finish the project," paid $1,671,923.00 for such work, and also paid plaintiff's subcontractors and suppliers in the

amount of $104,338.47, in order to close out the Project and clear all liens. (Id. ¶ 37). The Project was completed in May 2018, five months behind schedule. (Id. ¶ 38). According to defendant, it has incurred damages of at least $300,000.00 "related to completion costs above the fixed price contract," non-compliant materials, delay costs, legal fees and expenses. (Id. ¶ 43).

C.  Arbitration Agreements

In support of their motions, plaintiff and third-party defendant rely upon the arbitration agreements contained in plaintiff's contract and third-party defendant's contract. These arbitration agreements, which are identical, state in pertinent part as follows:

> **11. DISPUTE RESOLUTION**
>
> (a.) Claims, disputes, or other matters in question between the parties to this Agreement, which cannot be immediately resolved through good-faith negotiation by the Parties, shall be resolved by non-binding mediation. . . .
>
> (b.) Any claim, dispute or other matter in question not resolved by mediation shall be decided by binding arbitration in accordance with the North Carolina Rules of Court-Ordered Arbitration then in effect unless the parties agree otherwise. The arbitrators will not have jurisdiction to consider any claim for punitive damages. These arbitration provisions and any arbitration shall be specifically enforceable in any court of competent jurisdiction.
>
> . . . .
>
> (e.) The award rendered by arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

(Third-Party Complaint, Exs. 1 & 2 (DE 32-2 and DE 32-3 at 10); see Third-Party Def. Mem. (DE 46) at 2; Pl's Notice (DE 57) at 2; Pl's Reply (DE 61) at 2).

**COURT'S DISCUSSION**

A.  Motions to Dismiss for Lack of Jurisdiction and to Compel Arbitration

Because the motions by third-party defendant and plaintiff implicate this court's jurisdiction, the court addresses them first before turning to defendant's motion to dismiss for failure to state a claim.

8

1.     Standard of Review

Section 3 of the Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4 authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 4 provides that, when presented with such a motion, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. Furthermore, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).

In reviewing a motion to compel arbitration, the "court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., ___ F.3d ___, 2019 WL 6516483, at *6 (4th Cir. 2019) (quotations omitted). If, however, the "'making of the arbitration agreement be in issue,' then 'the court shall proceed summarily to the trial thereof.'" Id. (quoting 9 U.S.C. § 4). The court is obliged to conduct a trial only "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof," under a summary judgment standard. Id. (quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

2. Third-Party Defendant's Motion

When faced with a motion to compel arbitration, the court analyzes only two "gateway matter[s]." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2006). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). Second, where the court concludes there is such an agreement, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

Here, the "gateway matter[s]" are satisfied with respect to the arbitration agreement contained in third-party defendant's contract with defendant. Howsam, 537 U.S. at 83. First, the arbitration agreement is valid, where it is in writing and it is contained within third-party defendant's contract with defendant for construction of the Project. (See Third-Party Complaint, Ex. 2 (DE 32-3 at 10)). Second, the scope of the arbitration agreement is broad, covering "[c]laims, disputes, or other matters in question between the parties to this Agreement." (Id.). Defendant's claim for breach of the third-party defendant's contract easily falls within the scope of this arbitration clause. Thus, where third-party defendant has not defaulted on its right to arbitrate, the claim must be arbitrated in accordance with the arbitration agreement.

Defendant does not dispute the validity or scope of the arbitration agreement contained in third-party defendant's contract with defendant. (See Def's Resp. (DE 55) at 1, 10). There has thus been no "unequivocal[] den[ial] 'that an arbitration agreement exists,'" and there is no need to consider further whether the instant dispute between defendant and third-party defendant is arbitrable. Berkeley Cty. Sch. Dist., ___ F.3d ___, 2019 WL 6516483, at *6 (quoting Chorley, 807 F.3d at 564).

Defendant, however, raises the issue of who will conduct the arbitration to be ordered by the court. Defendant requests to have the court order that the arbitration "shall be administered by

the American Arbitration Association ('AAA') pursuant to the AAA Construction Industry Arbitration Rules." (Def's Resp. (DE 55) at 1). Third-party defendant seeks 30 days to reach an agreement with defendant on the identity of the arbitrator, and requests that the court retain jurisdiction to appoint an arbitrator only if the parties cannot agree on the arbitrator.

Upon finding the dispute arbitrable, the court must enter an "order directing that such arbitration proceed in the manner provided for in such agreement," or "directing the parties proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. With respect to appointment of arbitrators, the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.

In this case, the arbitration agreement provides that "[a]ny claim, dispute or other matter in question not resolved by mediation shall be decided by binding arbitration in accordance with the North Carolina Rules of Court-Ordered Arbitration then in effect unless the parties agree otherwise." (Third-Party Complaint, Ex. 2 (DE 32-3 at 10)). Arbitration, however, in accordance with the North Carolina Rules of Court-Ordered Arbitration, is not feasible here because such rules contemplate a proceeding in the North Carolina district court where the court appoints an arbitrator through the use of its list of qualified arbitrators for the state court district. See N.C. Gen. Stat. § 7A-37.1; Def's Resp. Ex. 3 (DE 55-3), Rules for Court-Ordered Arbitration in North Carolina, Rule 4(a)(1) (stating the "court shall rotate through the list for their [sic] district"). Therefore,

under section 5 of the FAA, the primary method identified in the arbitration agreement for determining the identity of an arbitrator fails.

The arbitration agreement nonetheless suggests a secondary method for determining the identity of an arbitrator, namely, where "the parties agree otherwise." (Third-Party Complaint, Ex. 2 (DE 32-3 at 10)). As represented by third-party defendant, it and defendant have not conferred regarding whether they otherwise agree on the identity of the arbitrator, because defendant did not expressly consent in its response to arbitration.

Accordingly, consistent with the terms of the arbitration agreement, the court directs defendant and third-party defendant to confer to determine whether they can reach agreement on the identity of an arbitrator, and to file a joint notice within 30 days of the date of this order specifying whether they have agreed on an arbitrator. If the parties have agreed on an arbitrator, they shall propose a consent order appointing such arbitrator to arbitrate the parties' dispute in accordance with this order and the terms of the arbitration agreement. If the parties cannot agree on an arbitrator, they shall each propose an arbitrator and provide their reasons for objection to the other parties' proposal. Thereupon, the court will enter such further order appointing an arbitrator pursuant to 9 U.S.C. § 5.

In sum, where the sole claim between defendant and third-party defendant is arbitratable, the court orders arbitration of such dispute in accordance with the terms of the arbitration agreement in the third-party defendant's contract. Because all claims between defendant and third-party defendant are arbitrable, the court dismisses defendant's action against third-party defendant. The court retains jurisdiction of the action against third-party defendant solely to appoint an arbitrator, if the parties are unable to reach agreement on an arbitrator in accordance with the terms set forth herein.

3. Plaintiff's Notice of Joinder and Motion

In plaintiff's notice, which the court construes as including a motion to compel arbitration and for voluntary dismissal of its claims in favor of arbitration, plaintiff seeks to arbitrate its claims against defendant under the terms of the arbitration agreements in plaintiff's contract and the third-party defendant's contract. Defendant opposes plaintiff's motion on the basis that plaintiff has waived the right to proceed to arbitration, and defendant seeks dismissal of plaintiff's claims on the basis of defendant's motion to dismiss under Rule 12(b)(6). For the reasons stated below, the court agrees that plaintiff has waived the right to proceed to arbitration on its claims. The court will address in the next section defendant's motion to dismiss.

"Under the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) (quoting 9 U.S.C. § 3). "Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342–43 (4th Cir. 2009). "A party is in default only if it has 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 713 (4th Cir. 2015) (quoting Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)).

"[E]ven in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, 'the dispositive question is whether the party objecting to arbitration has suffered actual prejudice.'" Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 586–87 (4th Cir. 2012) (quoting MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001)). "Two factors specifically inform our inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." Degidio v. Crazy Horse

Saloon & Rest. Inc., 880 F.3d 135, 140–41 (4th Cir. 2018) (quoting Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 730 (4th Cir. 1991)).

The court must consider activity that the moving party initiated "in assessing that party's default." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 206 (4th Cir. 2004). A litigant defaults by "pursuing [a] merits-based strategy." Degidio, 880 F.3d at 141. It is thus a strong basis for default where, after proceeding with litigation it commenced, a plaintiff seeks to compel arbitration of its own claims. Indeed, "prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." MicroStrategy, Inc., 268 F.3d at 250 (quoting Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir.1997)). In this context, "prejudice . . . refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Doctor's Assocs., Inc., 107 F.3d at 134; see, e.g., Mozingo v. S. Fin. Grp., Inc., 520 F. Supp. 2d 725, 733 (D.S.C. 2007) (holding plaintiff waived right to arbitrate after defendants filed a motion to dismiss plaintiff's claims).

In this case, plaintiff waived its right to arbitrate its claims because plaintiff commenced litigation in this court, sought to advance on the merits of such claims in this court, and then sought to compel arbitration of those same claims only after defendant moved to dismiss them. By expressly litigating "the same legal and factual issues as those [plaintiff] now wants to arbitrate" plaintiff has waived the right to arbitrate its claims. MicroStrategy, Inc., 268 F.3d at 250; Doctor's Assocs., Inc., 107 F.3d at 133. In addition, plaintiff "substantially utiliz[ed] the litigation machinery" by first advancing fraud claims on the basis of the same underlying facts, then opposing dismissal of such claims and moving for leave to file a third amended complaint, then advancing its current claims with a demand for a trial by jury, and then opposing defendant's motion to dismiss by insisting upon further determination of the merits of its claim in federal court.

14

Dillon, 787 F.3d at 713 (quoting Maxum Founds, 779 F.2d at 981). Moreover, defendant has been actually prejudiced by its expenditures in opposing these successive sets of claims through briefing motions to dismiss and investigating plaintiff's claims in the context of federal court litigation. Doctor's Assocs., Inc., 107 F.3d at 134. Thus, due to multiple factors, plaintiff has waived its right to proceed to arbitration.

Plaintiff argues it should not be held in default because defendant, also, substantially utilized the litigation machinery by not seeking to arbitrate earlier. Plaintiff suggests that defendant could have avoided substantial litigation costs by seeking to move the matter to arbitration at the earliest possible moment. But, the question of default turns upon the "delay and the extent of the moving party's trial-oriented activity," not the non-moving party's defensive activity. Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 206 (4th Cir. 2004) (emphasis in original; quotations omitted). The court must be "unwilling to include activity that the moving party did not initiate in assessing that party's default." Id. In any event, defendant is not the party moving to compel arbitration of plaintiff's claims; rather, defendant seeks dismissal with prejudice of such claims. In doing so, defendant has sought to end the litigation altogether, not prolong it, much less seek to advance to a jury trial on plaintiff's claims. Accordingly, plaintiff's argument is without merit.

In sum, plaintiff has waived the right to proceed to arbitration under plaintiff's contract with defendant. Accordingly, plaintiff's motion to compel arbitration and to voluntarily dismiss its claims in favor of arbitration, advanced through its notice, is denied.

B.   Defendant's Motion to Dismiss

   1.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

2. Analysis

Defendant argues that plaintiff's claims fail as a matter of law, because the complaint establishes, on its face, that plaintiff was not a licensed general contractor when it contracted to complete the Project. As a result, defendant argues, plaintiff is barred as a matter of law from seeking recovery on the basis of breach of contract or for quantum meruit/unjust enrichment for its work on the Project. The court agrees.

Under well-established North Carolina law, "[w]hen . . . an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the [general contractor] statute, he may not recover for the owner's breach of that contract." Bryan Builders Supply v. Midyette, 274 N.C. 264, 270 (1968); see N.C. Gen. Stat. § 87-1 (defining "general contractor" applicable to building construction projects in excess of $30,000.00). "[C]ontracts entered into by unlicensed construction contractors, in violation of a statute passed for the protection of the public, are unenforceable by the contractor." Brady v. Fulghum, 309 N.C. 580, 583 (1983); see Ron Medlin Const. v. Harris, 364 N.C. 577, 581 (2010) (same).

"[T]he existence of a license at the time the contract is signed is determinative." Brady, 309 N.C. at 586. A contract for construction with an unlicensed contractor "cannot be validated

16

by the contractor's subsequent procurement of a license." Id.; cf. Hall v. Simmons, 329 N.C. 779, 785 (1991) (noting statutory exception for contractor "whose license <u>expires</u> during construction") (emphasis added).

"The same rule which prevents an unlicensed person from recovering damages for the breach of a construction contract has generally been held also to deny recovery where the cause of action is based on [q]uantum meruit or unjust enrichment." Bryan Builders Supply, 274 N.C. at 273. "The importance of deterring unlicensed persons from engaging in the construction business outweighs any harshness between the parties and precludes consideration for unjust enrichment." Id.

Here, the alleged facts in the complaint establish, on their face, that plaintiff's claims for breach of contract and quantum meruit / unjust enrichment are barred as a matter of law. Plaintiff alleges that, in February 2017, its owner, Raeisghasem, "was not a licensed general contractor in the state of North Carolina," and that on June 10, 2017, he "had not taken any steps towards getting licensed in North Carolina." (Compl. ¶¶ 8, 10). Plaintiff alleges it nonetheless submitted a bid for the Project, comprising "the construction of a Circle K gas station and convenience store," on June 28, 2017. (Id. ¶¶ 9, 12). Then, "[o]n or about July 11, 2017, [plaintiff] entered into an 'Agreement for Construction – Lump Sum Contract' with [defendant] relating to the Project," upon which contract plaintiff asserts a breach of contract claim. (Id. ¶¶ 10, 14, 26, 28). The Project value "listed in the contract was $1,300,000." (Id. ¶ 16). "Prior to signing the Contract . . . [Raeisghasem] was still waiting on the State of North Carolina to issue [plaintiff] a $500,000 project limit general contractor's license." (Id. ¶ 15). "At all relevant times, . . . [plaintiff] was unlicensed when it signed the Contract." (Id. ¶ 16).

Accordingly, based on the admissions in the complaint, plaintiff was not a licensed general contractor when it entered into the construction contract upon which plaintiff bases its claims in

17

this case. Said construction contract was for the building construction Project valued at $1,300,000.00, such that a general contractor's license was required under North Carolina law. Therefore, plaintiff's claim based upon said contract, and plaintiff's claim for quantum meruit / unjust enrichment for materials and work supplied for the Project, are barred and must be dismissed as a matter of law.

In opposition to dismissal of its claims, plaintiff does not raise any issue with the aforementioned law. Rather, plaintiff argues that defendant inappropriately asks the court to rely on evidence outside of the complaint in support of dismissal. The court, however, need not rely upon the documents attached to defendant's motion to dismiss to reach a decision on the motion. Dismissal is warranted on the basis of the facts alleged in the complaint alone.

For example, plaintiff points out that the contract attached to defendant's motion to dismiss is dated July 7, 2017, whereas plaintiff alleges in the complaint a contract with the same title but signed on July 11, 2017. This difference is not material, because solely accepting the allegations in the complaint as true, plaintiff entered into a contract with defendant for construction of the Project executed on July 11, 2017, and that is the contract upon which plaintiff relies in support of its breach of contract claim. (See Compl. ¶¶ 10, 14, 26-28).

Plaintiff also suggests it is premature for the court to address the merits of defendant's defense based upon North Carolina law, where the 12(b)(6) standard only requires plaintiff to plead a "legally plausible claim." (Pl's Resp. (DE 42) at 2). This suggestion fails for two reasons. First, where, as here, "facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Second, plaintiff has not pleaded a "legally plausible claim" as plaintiff suggests, because its claims are barred as a matter of law based upon the allegations of the complaint.

In sum, plaintiff's claims must be dismissed for failure to state a claim under Rule 12(b)(6). Accordingly, defendant's motion to dismiss is granted. Where plaintiff's claims fail as a matter of law based upon the admissions in the complaint, dismissal is with prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) (DE 33) is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE. Third-party defendant's motion to dismiss for lack of jurisdiction and to compel arbitration (DE 45) is GRANTED. Plaintiff's notice of adoption of third-party defendant's motion to dismiss (DE 57), which the court has construed as including a motion to compel arbitration and for voluntary dismissal of its claims in favor of arbitration, is DENIED. Defendant's claims against third-party defendant are DISMISSED in favor of arbitration in accordance with their arbitration agreement, and on the terms set forth herein. The clerk is DIRECTED to enter judgment and close this case in accordance herewith. The court retains jurisdiction over defendant's claim against third-party defendant solely to appoint an arbitrator, if defendant and third-party defendant are unable to reach agreement on an arbitrator in accordance with the terms set forth herein.

In particular, the court DIRECTS defendant and third-party defendant to confer to determine whether they can reach agreement on the identity of an arbitrator, and to file a joint notice within **30 days** of the date of this order specifying whether they have agreed on an arbitrator. If defendant and third-party defendant have agreed on an arbitrator, they shall propose a consent order appointing such arbitrator to arbitrate the parties' dispute in accordance with this order and the terms of their arbitration agreement. If defendant and third-party defendant cannot agree on an arbitrator, they shall each propose an arbitrator and provide their reasons for objection to the other parties' proposal. Thereupon, the court will enter such further order appointing an arbitrator pursuant to 9 U.S.C. § 5.

19

SO ORDERED, this the 13th day of December, 2019.

                                            LOUISE W. FLANAGAN
                                            United States District Judge