IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-240-FL

| | |
|---|---|
| RAEIS CONSTRUCTORS, LLC, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CIRCLE K STORES, INC., ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

This matter is before the court on the motion for summary judgment filed by defendant/counter-plaintiff Circle K Stores, Inc. ("Circle K") (DE 76). The motion is not opposed. In this posture the issues raised are ripe for ruling. For the following reasons the motion is granted.

## STATEMENT OF THE CASE

Plaintiff/counter-defendant Raeis Constructors LLC ("Raeis") commenced this action on May 25, 2018, and filed the operative third amended complaint on January 28, 2019, asserting claims of breach of contract and a claim of quantum meruit/unjust enrichment, on the basis of Raeis's provision of labor and materials for the construction of a Circle K store in Hope Mills, North Carolina (the "store").

Circle K moved to dismiss claims by Raeis, and it filed an answer asserting a counterclaim for breach of contract against Raeis, as well as a third party complaint against former third-party defendant Meco Builders, Inc. ("Meco"). On December 13, 2019, the court granted Circle K's motion to dismiss, and it granted third-party defendant's motion to dismiss Circle K's action against Meco, in favor of arbitration. Raeis Constructors, LLC v. Circle K Stores, Inc., No. 5:18-

CV-240-FL, 2019 WL 6826356, at *10 (E.D.N.C. Dec. 13, 2019). This left Circle K's counterclaim against Raeis as the sole remaining claim in this matter.[1]

Following a period of discovery, Circle K filed the instant motion for summary judgment on May 28, 2021, relying upon a statement of material facts and the following exhibits and categories of exhibits: 1) contract between the parties, 2) correspondence between the parties, 3) declaration of Wes Williams, construction manager for Circle K, 4) building permit issued for the construction of the store, 5) records and correspondence of the North Carolina Licensing Board ("NCLB"), 6) contract between Circle K and Meco, 6) an expert report by FTI Consulting, Inc. regarding damages.

## STATEMENT OF FACTS

The undisputed material facts may be summarized as follows.[2] Circle K and Raeis entered into a contract for construction of the store (hereinafter the "Agreement"). The Agreement states that Raeis' work "shall be commenced on 7/12/17, and substantially completed on or before 11/20/2017 (the 'Substantial Completion Date'), and shall be finally completed to the satisfaction of Company by 11/20/2017." Article 1(a) of the Agreement's Terms and Conditions states that Raeis' work "shall be performed in compliance with all applicable codes, laws, ordinances, rules, regulations, decisions, orders, and requirements of governmental agencies having jurisdiction" and that Raeis "shall obtain and pay for all permits, licenses, full inspection fees, taxes, and other fees

---

[1] The court inadvertently closed the case in its December 13, 2019, order, and it neglected to recognize the remaining pendency of Circle K's counterclaim against Raeis. Accordingly, on February 4, 2020, the court corrected and amended its December 13, 2019, order to specify that Circle K's counterclaim against Raeis remains open and pending for adjudication.

[2] Undisputed facts are drawn from Circle K's statement of material facts. Where Circle K relies upon a statement of material facts that is not controverted, the court may accept those facts as true for purposes of summary judgment, under Local Rule 56.1(a)(2). In addition, the undisputed material facts regarding Circle K's damages are drawn from Circle K's exhibit 17 in support of summary judgment.

2

required in performance of the Work, except as to those, if any, specifically identified in the Contract Documents as the responsibility of the Company." Article 1(e) of the Agreement states that Raeis "represents that it is fully licensed by, authorized to perform the Work in, and registered to do business in the state where the Project is located."

Raeis did not commence work on the Project by July 12, 2017 as required under the terms of the Agreement. Raeis did not perform all work in compliance with all applicable codes, laws, ordinances, rules, regulations, decisions, orders, and requirements of governmental agencies having jurisdiction as required under Article 1(a) of the Agreement's Terms and Conditions. Raeis did not obtain and pay for all permits, licenses, full inspection fees, taxes, and other fees required in performance of its work on the Project as required under Article 1(a) of the Agreement's Terms and Conditions. At the time Raeis entered into the Agreement, it was not fully licensed by or authorized to perform the work for the Project by the state of North Carolina as required under Article 1(e) of the Agreement's Terms and Conditions.

Raeis entered into the Agreement prior to obtaining a license from the NCLB. Thus, Raeis was not allowed to enter into a contract where the cost of the undertaking was equal to or exceeded $30,000.00. Even after obtaining its license, Raeis performed work on the Project when its license only permitted it to perform work on projects where the cost of the undertaking was less than $500,000.00.

Article 10 of the Agreement's Terms and Conditions states, in relevant part:

> If Contractor . . . breaches any term of this Agreement . . . then Contractor shall be in default of this Agreement. Upon Contractor's default, Company, without limiting or waiving any other rights which Company may have at law or equity, may . . . terminate this Agreement for cause . . . and seek compensation from Contractor for all sums Company expended in excess of the Contract Sum to complete the Work or portion thereof . . . withhold payments . . . and/or . . . seek from Contractor monetary damages in excess of any unpaid Contract Sum . . . including . . . attorneys' fees, additional costs of other contractors to perform the

3

Work, and damages for delay to the Project. Company shall be entitled to collect its reasonable attorneys' fees and costs, including expert and consulting fees, incurred in enforcing any term of this Agreement or as a result of Contractor's breach of any term of this Agreement. Including, without limitation participation in any settlement discussions, alternative dispute resolution processes, or litigation.

Article 10(a)(1) of the Agreement's Terms and Conditions states, in relevant part:

If Contractor is in default of this Agreement at any time for any of the reasons identified in this Paragraph 10, Company may . . . after giving Contractor seven (7) days written notice (unless circumstances require shorter notice), terminate Contractor and exclude Contractor from the site and take possession or all materials, equipment, tools. and construction equipment and machinery . . . and finish the Work by whatever reasonable method Company may deem expedient.

On or about October 27, 2017, Circle K sent a termination letter to Raeis in accordance with Article 10 of the Agreement. At the time of termination, Raeis had been paid $182,700.00 towards the contract price of $1,659,940.00.24. The Project was not completed by November 20, 2017 as required under the Agreement.

Circle K incurred $625,708.00 in financial damages as a result of the breach by Raeis, calculated as follows:

| Item | Amount |
|---|---|
| Cost to Complete the Project After Raeis & Meco Termination | $1,671,923 |
| Less: | |
|    Remaining Value of Raeis & Meco Contracted Work | ($1,238,738) |
|    Adjustments to Sela Completion Costs Unrelated to Remaining Raeis & Meco Work | ($11,550) |
| **Increased Cost of Construction** | **$421,635** |
| Amounts Reimbursed to Sela to Pay Vendors Raeis Meco Failed to Pay | $108,223 |
| Lost Profits From Project Delays in Opening | $95,851 |
| **Total** | **$625,708** |

(Ex. 17 (DE 77-17) at 6).

# COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

5

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

A claim for breach of contract requires a plaintiff to prove "the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968); see Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276, (2019) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." (quotations omitted)).

Here, because summary judgment is not opposed, the court deems admitted the material facts stated in Circle K's statement of facts, as detailed herein. Those facts establish: 1) the existence of a contract between Circle K and Raeis, and 2) the breach of the provision in the Agreement requiring commencement of work on July 12, 2017, as well Article 1(a) and Article 1(e) of the Agreement, requiring Raeis to represent that it is fully licensed to perform the work and to perform all work in compliance with North Carolina law. In addition, there is no genuine issue

6

of material fact that Circle K incurred damages in the amount of $625,708.00 as a result of the breach.

Circle K asserts, additionally, that it is entitled to "pre-judgment interest." (Mem. (DE 77) at 18). "In an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." N.C. Gen. Stat. Ann. § 24-5(a). "If the parties have agreed in the contract that the contract rate shall apply after judgment, then interest on an award in a contract action shall be at the contract rate after judgment; otherwise it shall be at the legal rate." Id. "[T]he legal rate of interest shall be eight percent (8%) per annum." N.C. Gen. Stat. § 24-1. Here, the Agreement does not provide a rate of interest. (See Ex. 3 (DE 77-3) at 9). Accordingly, where Raeis breached the Agreement beginning July 12, 2017, Circle K shall recover pre-judgment interest, accruing from July 12, 2017, up to and until date of entry of judgment at the rate of eight percent (8%) per annum on the sum of $625,708.00. For judgment entered the date of this order, the court calculates prejudgment interest in the amount of $229,158.21.[3]

Circle K reserves the right to seek reasonable attorneys' fees and costs, including expert and consulting fees, to be determined at a later date. The court's instant order and judgment does not address attorneys' fees and costs, which properly may be determined following entry of judgment on the merits of Circle K's counterclaim.

## CONCLUSION

Based on the foregoing, Circle K's motion for summary judgment is GRANTED. The clerk is DIRECTED to enter judgment in favor of Circle K on its counterclaim against Raeis in the amount of $625,708.00, in addition to pre-judgment interest in the amount of $229,158.21. Thereupon the clerk is DIRECTED to close this case.

---

[3]  The time period for calculation of interest is four years, plus twenty days (or 4.054794 years), with interest compounding annually at a rate of 8%.

SO ORDERED, this the 2nd day of August, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge