IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-240-FL

| | | |
|---|---|---|
| RAEIS CONSTRUCTORS, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CIRCLE K STORES, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

This matter is before the court on the motion for attorneys' fees filed by defendant/counter-plaintiff Circle K Stores, Inc. ("Circle K") (DE 82). The motion is not opposed. In this posture the issues raised are ripe for ruling. For the following reasons the motion is granted in part and denied in part, as set forth herein.

**STATEMENT OF THE CASE**

Plaintiff/counter-defendant Raeis Constructors LLC ("Raeis") commenced this action on May 25, 2018, and filed a first and second amended complaint on June 29, 2018, asserting a claim of fraud against Circle K arising from Raeis's provision of labor and materials for the construction of a Circle K store in Hope Mills, North Carolina (the "store"). Raeis asserted diversity jurisdiction, sought damages in excess of $75,000.00, and a trial by jury.

Circle K initially moved to dismiss the amended complaint on October 3, 2018, for failure to state a claim. Raeis responded in opposition and moved for leave to file a third amended complaint. The court allowed Raeis to file its third amended complaint and found moot Circle K's initial motion to dismiss.

Raeis filed the operative third amended complaint on January 28, 2019, asserting claims of breach of contract and a claim of quantum meruit/unjust enrichment, again on the basis of Raeis's provision of labor and materials for the construction of the store. Raeis no longer asserted a claim of fraud. Raeis sought damages in excess of $377,357.00, and trial by jury.

Circle K moved to dismiss claims by Raeis, and it filed an answer asserting a counterclaim for breach of contract against Raeis, as well as a third-party complaint against former third-party defendant Meco Builders, Inc. ("Meco"). In its counterclaim and third-party complaint, Circle K asserted that Raeis and Meco breached contracts for the construction of the store, causing damages for completion costs, delay costs, legal fees, and expenses.

Raeis responded in opposition to Circle K's motion to dismiss for failure to state a claim and Circle K replied. In the meantime, Meco moved to dismiss for lack of jurisdiction and to compel arbitration. Upon consent motion, on May 20, 2019, the court stayed all proceedings, including briefing on Meco's motion and ruling on Circle K's motion to dismiss, for 90 days to allow the parties to engage in mediation.

The case returned from mediation, resulting in impasse. On August 12, 2019, Circle K responded to Meco's motion to dismiss for lack of jurisdiction and to compel arbitration, and Meco replied. Raeis noticed its adoption of Meco's motion to dismiss and to compel arbitration. Upon consideration thereof, on August 22, 2019, the court entered the following text order construing the notice as including a motion for voluntary dismissal:

> TEXT ORDER regarding plaintiff's 57 Notice of adoption of motion to dismiss and compel arbitration. The court construes plaintiff's notice, in part, as a motion under Federal Rule of Civil Procedure 41(a)(2) for voluntary dismissal of its claims in favor of arbitration of the same, where it asserts "all of the claims of all of the parties in this lawsuit . . . are arbitrable." (DE57 at 5). Defendant Circle K. Stores, Inc., is DIRECTED to file a response to plaintiff's notice, so construed, within 14 days of the date of this order.

Circle K responded to the court's text order, urging the court to find that Raeis waived its right to proceed to arbitration, and urging the court to grant its motion to dismiss.

On December 13, 2019, the court granted Circle K's motion to dismiss, and it granted Meco's motion to dismiss Circle K's action against Meco, in favor of arbitration. <u>Raeis Constructors, LLC v. Circle K Stores, Inc.</u>, No. 5:18-CV-240-FL, 2019 WL 6826356, at *10 (E.D.N.C. Dec. 13, 2019). The court directed Circle K and Meco to proceed with arbitration in accordance with their arbitration agreement. (Jan 13, 2020, Order (DE 67)). This left Circle K's counterclaim against Raeis as the sole remaining claim in this matter.[1]

Following a period of discovery, Circle K moved for summary judgment on May 28, 2021, on its counterclaim against Raeis. The court granted the motion, and directed the clerk to enter judgment in favor of Circle K on its counterclaim against Raeis in the amount of $625,708.00, in addition to pre-judgment interest in the amount of $229,158.21. The court reserved ruling on attorneys' fees and costs.

The instant motion followed, in which Circle K seeks attorneys' fees and costs in the amount of $421,864.75, as well as expert fees in the amount of $122,558.79, for an aggregate fee award of $544,423.54. In support of the motion, Circle K relies upon a memorandum of law, proposed order, and exhibits comprising: 1) a Meco lien agaitst Circle K; 2) contract between Circle K and Raeis (the "contract"); 3) affidavits of Tiffany Harrod ("Harrod") and Christopher Hinnant ("Hinnant"), counsel for Circle K; 4) affidavit of Dan Clark ("Clark"), managing director of FTI Consulting, Inc. ("FTI"), Circle K's expert.

---

[1] The court inadvertently closed the case in its December 13, 2019, order, and it neglected to recognize the remaining pendency of Circle K's counterclaim against Raeis. Accordingly, on February 4, 2020, the court corrected and amended its December 13, 2019, order to specify that Circle K's counterclaim against Raeis remained open and pending for adjudication.

3

## COURT'S DISCUSSION

"[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 n. 31 (1975). Under North Carolina law, a choice of law clause in a contract is presumed to be valid. Perkins v. CCH Computax, Inc., 333 N.C. 140, 141, 146 (1992).

Here, the contract on which Circle K relies in asserting an award of fees[2] against Raeis provides, in pertinent part, as follows:

> [Circle K] shall be entitled to collect its reasonable attorneys' fees and costs, including expert and consulting fees, incurred in enforcing any term of this Agreement or as a result of Contractor's breach of any term of this Agreement, including, without limitation, participation in any settlement discussions, alternative dispute resolution processes, or litigation.

(DE 84-1 at 11 (Contract § 10(a)(2))). It also includes a North Carolina choice of law provision. (Id. at 13 (Contract § 12(i))).

North Carolina General Statute § 6-21.6 provides that "[i]f a business contract governed by the laws of this State contains a reciprocal attorneys' fees provision, the court or arbitrator in any suit, action, proceeding, or arbitration involving the business contract may award reasonable attorneys' fees in accordance with the terms of the business contract." N.C. Gen. Stat. § 6-21.6(c). "In determining reasonable attorneys' fees and expenses under this section, the court or arbitrator may consider all relevant facts and circumstances, including, but not limited to, the following:"

---

[2] Circle K's motion and supporting papers do not consistently refer to amounts sought as both attorneys' fees and costs. However, Circle K's proposed order makes clear that the total amount of attorneys' fees sought by the motion includes both "fees and costs," (DE 85 at 1), and the supporting invoices submitted with the motion also consistently bill for both attorneys' fees and costs, inclusively. Therefore, unless otherwise specified, the court's analysis uses "fees" as a shorthand for both fees and costs, where no separate argument or issues are raised concerning costs that are not covered in the analysis of attorneys' and expert fees.

(1) The amount in controversy and the results obtained.

(2) The reasonableness of the time and labor expended, and the billing rates charged, by the attorneys.

(3) The novelty and difficulty of the questions raised in the action.

(4) The skill required to perform properly the legal services rendered.

(5) The relative economic circumstances of the parties.

(6) Settlement offers made prior to the institution of the action.

(7) Offers of judgment pursuant to Rule 68 of the North Carolina Rules of Civil Procedure and whether judgment finally obtained was more favorable than such offers.

(8) Whether a party unjustly exercised superior economic bargaining power in the conduct of the action.

(9) The timing of settlement offers.

(10) The amounts of settlement offers as compared to the verdict.

(11) The extent to which the party seeking attorneys' fees prevailed in the action.

(12) The amount of attorneys' fees awarded in similar cases.

(13) The terms of the business contract.

Id.

Consistent with the factors noted in § 6-21.6, the North Carolina Supreme Court has required findings on the following factors:

> the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney; . . . the novelty and difficulty of the questions of law; the adequacy of the representation; the difficulty of the problems faced by the attorney, especially any unusual difficulties; and the kind of case for which the fees are sought and the result obtained. The court may also in its discretion consider and make findings on the services expended by paralegals and secretaries acting as paralegals if, in the trial court's opinion, it is reasonable to do so.

United Labs., Inc. v. Kuykendall, 335 N.C. 183, 195 (1993) (internal citations omitted). The North Carolina Court of Appeals has relied upon similar factors articulated in Rule 1.5 of the North Carolina Rules of Professional Conduct, which are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

N.C. Rule of Professional Conduct 1.5; see Ehrenhaus v. Baker, 243 N.C. App. 17, 22 (2015).

Where § 6-21.6 allows consideration of "all relevant facts and circumstances," the court also considers here the facts and circumstances suggested by the United States Court of Appeals for the Fourth Circuit. In particular, the Fourth Circuit has instructed district courts to determine a "lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the Johnson/Barber factors when making its lodestar determination." Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008) (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 (4th Cir. 1978) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). The Johnson/Barber factors are similar to those noted above.[3]

---

3    The Johnson/Barber factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant

The district court need only discuss "those factors of the litany that are applicable to the present fee determination, and the district court is under no obligation to go through the inquiry of those factors that do not fit." In re A.H. Robins Co., Inc., 86 F.3d 364, 376 (4th Cir. 1996). After calculating the lodestar figure, "the district court is in a position to adjust the award upward or downward in light of the relevant considerations identified in Johnson and elsewhere." Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir. 1983); see McAfee v. Boczar, 738 F.3d 81, 89 (4th Cir. 2013). The court may "award[ ] some percentage of the remaining amount, depending on the degree of success" achieved. Grissom, 549 F.3d at 321. "[T]he trial court has broad discretion to reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation of the [party required to pay attorneys' fees], and the relative economic status of the litigants." Arnold, 719 F.2d at 68. In addition, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984).

The court begins its analysis of the requested fees by considering three interrelated factors set forth in § 6-21.6(c): "(1) . . . the results obtained . . . (11) [t]he extent to which the party seeking attorneys' fees prevailed in the action . . . [and] (13) [t]he terms of the business contract." These factors, at the outset, require limitation of the amount of attorneys' fees awarded only to those attributable to claims by and against Raeis, and not those attributable to claims against Meco or

---

litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom, 549 F.3d at 321.

arbitration proceedings. This limitation is substantial, because the attorneys' fees requested, and the corresponding records of hours billed, in many instances relate only to claims and proceedings involving Meco. Further, in many instances, the attorneys' fees requested, and the corresponding records of hours billed, do not differentiate between claims involving Raeis and those involving Meco. The court addresses these categories in turn below.

    1.    Invoices Pertaining Solely to Meco or Arbitration

As a first category of non-qualifying fees requested, and hours billed, the court has identified multiple invoices that pertain solely to Meco or proceedings in arbitration involving Meco, as follows. In fact, each of the following invoices expressly is captioned with "Matter Description: Meco Arbitration."

| Invoice | Amount | Docket Entry DE 83-3 Page |
| --- | --- | --- |
| 10423896 | $78.00 | 198[4] |
| 10426001 | $5,296.50 | 201 |
| 10428687 | $2,966.11 | 204 |
| 10430995 | $19,870.13 | 208 |
| 10433954 | $44,772.58 | 213 |
| 10435745 | $7,913.30 | 225 |
| 10438313 | $28,062.26 | 229 |
| 10444057 | $1,930.00 | 236 |
| 10448889 | $44,832.35 | 242 |
| 10448927 | $438.00 | 252 |
| 10449669 | $7,041.00 | 256 |
| 10449670 | $101.00 | 261 |
| | | |
| **Total:** | **$163,301.23** | |

This total amount, $163,301.23, is excluded by the court from consideration in the award of attorneys' fees for multiple reasons. First, it does not reflect expenditure of time for any results

---

[4] Unless otherwise specified, all page numbers in citations in this order are to the page number designated in the footer generated by the court's case management/electronic case filing (CM/ECF) system, and not the page number, if any showing on the face of the document or the file.

8

obtained against Raeis in this case. Second, it does not reflect the extent to which Circle K prevailed in this action against Raeis, but rather only reflects time pertaining to the arbitration with Meco, where the court dismissed all claims against Meco in favor of arbitration. (See Dec. 13, 2019, Order (DE 62) at 19). Moreover, there is no information in the record regarding the prevailing party in the arbitration, apart from the fact, noted in invoice 10444057, that Circle K reached a settlement with Meco. (See DE 83-3 at 237). Finally, the contract containing the attorneys fee provision is only between Circle K and Raeis, and it does not provide for Raeis to pay attorneys fees for claims or arbitration involving Meco. (See DE 84-1 at 11-12 (Contract §§ 10-11)).

In so holding, the court has considered Circle K's suggestion, in its memorandum of law, that the court should consider its "extensive legal fees defending against Raeis's and Meco's claims on the Project." (Mem. (DE 83) at 4). The court also has considered the suggestion by counsel that "Raeis and Meco acted jointly as the general contractor on the Project without proper licensing in violation of North Carolina law." (Harrod Aff. (DE 83-3) ¶ 10). Circle K, however, provides no basis in the contract or in the law for awarding attorneys fees to it based upon claims involving Meco. While Circle K points to the fact that Meco filed a lien in the same amount as the claim brough by Raeis, Circle K does not provide grounds for recovery of fees involving Meco, where Circle K did not prevail against Meco on any claim in this case and the outcome of the arbitration is not disclosed in the record.[5]

Accordingly, there is no basis for awarding Circle K fees involving claims by or against Meco, including fees incurred in arbitration with Meco.

---

[5] Circle K's alternative grounds for an award of attorneys' fees against Raeis, N.C. Gen. Stat. §§ 6-21.5 and 44A-35, also do not provide any basis for recovery of fees from Raeis for claims involving Meco.

9

2. Mixed Invoices

In light of the foregoing, the court considers those invoices where hours attributable to Raeis and Meco are mixed. Because Circle K does not differentiate in its exhibits in support of the instant motion between hours attributable to Raeis and Meco, the court estimates, to the extent feasible, a reasonable division between the two. This process necessarily is inexact. Given that Circle K did not undertake this process in the first instance, at least in the alternative, the court draws all inferences in favor of a limitation of the fee award, when in doubt. To the extent the court has underestimated the time attributable to Raeis, the court finds that equitable considerations require inferences in favor of an underestimate rather than an overestimate. In particular, where Circle K did not even address the possibility of any distinction between Raeis and Meco hours in its memorandum or supporting papers, the court finds a lack of full disclosure and candor on the part of Circle K, for which it is appropriate as a matter of equity to draw inferences in favor of underestimating time attributable to Raeis.

For the following invoices, the court applies a 50% reduction in attorneys' fees invoiced to account for a mix of hours attributable to Raeis and Meco. While some invoices conceivably could be parsed individually for calculation of a greater or lesser reduction, the court finds that a 50% reduction in the aggregate is reasonable in light of the factors noted above.

| Invoice | Amount | Docket Entry DE 83-3 Page |
|---|---|---|
| 10378524 | $1,019.00 | 33 |
| 10384505 | $11,343.15 | 39 |
| 10396037 | $18,317.72 | 67 |
| 10398174 | $3,951.13 | 75 |
| 10403538 | $25,579.94 | 79 |
| 10404655 | $10,713.11 | 86 |
| 10407252 | $8,502.46 | 92 |
| 10408368 | $10,133.40 | 97 |
| 10414615 | $4,593.90 | 104 |
| 10417515 | $12,847.00 | 113 |

10

| Invoice | Amount | Docket Entry DE 83-3 Page |
|---|---|---|
| 10421009 | $19,947.88 | 118 |
| 10424931 | $27,518.35 | 125 |
| 10426000 | $5,010.02 | 134 |
| 10428686 | $5,929.01 | 139 |
| 10432063 | $2,221.13 | 149 |
| 10433953 | $1,202.86 | 154 |
| 10438312 | $704.50 | 162 |
| 10452069 | $17,663.50 | 189 |
| | | |
| Total | $187,198.06 | |
| 50% Reduction | **$93,599.03** | |

The expert fee records similarly do not distinguish between work related to Meco and work related to Raeis. (See, e.g., Clark Aff. (DE 83-5) ¶¶ 6, 15, 18). Therefore, the court likewise applies a 50% discount to the total expert fees of $122,558.79, leaving $61,279.40 properly under consideration representing work related to Raeis.

3. Remaining Invoices

The following remaining invoices in the record are not subject to similar reduction, where the descriptions in the invoices clearly demonstrate work related only to Raeis, and not Meco:

| Invoice | Amount | Docket Entry DE 83-3 Page |
|---|---|---|
| 10380477 | $272.00 | 36 |
| 10389705 | $4,192.40 | 45 |
| 10389710 | $17,279.78 | 50 |
| 10390214 | $2,957.40 | 56 |
| 10392169 | $512.85 | 60 |
| 10393079 | $925.70 | 63 |
| 10396548 | $3,634.63 | 72 |
| 10409953 | $556.00 | 101 |
| 10416059 | $7,578.53 | 108 |
| 10430994 | $9,389.67 | 144 |
| 10435744 | $360.00 | 159 |
| 10439747 | $799.00 | 166 |
| 10442009 | $66.00 | 170 |
| 10444056 | $2,500.50 | 173 |

11

| Invoice | Amount | Docket Entry DE 83-3 Page |
|---|---|---|
| 10446461 | $804.00 | 178 |
| 10448926 | $19,537.00 | 183 |
| | | |
| Total: | $71,365.46 | |

In sum, considering those invoices not excluded and not discounted above ($71,365.46), plus invoices discounted 50% ($93,599.03), yields $164,964.49 for consideration of additional factors bearing on the reasonableness of attorneys' fees, as well as $61,279.40 in expert fees, for an aggregate amount of $226,243.89 under consideration for additional factors.

4. Consideration of Additional Factors

For those invoices remaining under consideration, additional factors support a determination that the amounts billed are reasonable. These billed amounts are commensurate with the amount in controversy and the results obtained, in favor of Circle K on both the claims asserted by Raeis and the counterclaims asserted by Circle K against Raeis. While the legal issues raised by the claims and counterclaims were not particularly novel, they did present difficulty in terms of the complexity of the facts. This complexity is reflected appropriately in the expert fees sought, to the extent they are premised as limited herein on claims related to Raeis, and not Meco. In light of that complexity, substantial skill was required to perform properly the legal services rendered.

The court also recognizes that Circle K successfully obtained dismissal of all of Raeis's claims, despite briefing in opposition by Raeis. Further challenges were presented in determining whether Raeis could join in arbitration with Meco. By contrast, Circle K's motion for summary judgment on Circle K's counterclaims was not contested. The instant motion for attorneys' fees also was not contested. This lack of opposition as the case progressed may be indicative of the relative economic circumstances of the parties, with Circle K in a much more favorable position

12

based on the instant record. However, there is no indication that Circle K unjustly exercised superior economic bargaining power in the conduct of the action.

With respect to settlement, court has taken into consideration the attempts made to settle the case, as reflected in the record. (See Harrod Aff. (DE 83-3) ¶ 9). The court also has taken into account the relative strength of the parties' litigation positions, and that Raeis did not have a strong basis upon which to assert its tort claims. In terms of comparison to the amount of attorneys' fees awarded in similar cases, the court notes that the full amount of fees sought by the motion ($544,423.54) is unusually high considering the amount of the final judgment ($625,708.00, excluding interest) and the size of the record, but that the amount of fees presently under consideration attributable only to Raeis ($226,243.89) is more in line with other cases of similar scope. With respect to contract provisions, the plain, broad, language of the default section in the contract encompasses both the attorneys' fees and the expert fees, as considered herein.

Also supporting the fee request in this case are factors such as the nature and length of the professional relationship, where Circle K employed the same counsel for the duration of this matter, and where the billing arrangement was such that the law firm of Musch Hardt Kopf & Harr P.C. oversaw and incorporated the bills of local counsel, Barnwell Whaley. (Harrod Aff. (DE 83-3) ¶¶ 17, 19). Furthermore, the experience, reputation, and abilities of the lawyers performing the services billed, as well as the experts performing the expert services billed, are supported by the credentials detailed in the Harrod and Clark affidavits. (Id. ¶¶ 2, 4, 11, 12, 13-16; Clark Aff. (DE 83-5) ¶¶ 2-9).

Finally, the court considers the reasonableness of the hourly rates billed. Circle K claims hourly rates for Texas-based attorneys as follows: partners and senior attorneys: $340-520; associates $290-320, (Harrod Aff. ¶ 13); and for North Carolina-based local counsel as follows:

13

$300-350 (Id. ¶ 20). These rates are supported by the information about these attorneys' credentials and the respective legal markets in the Harrod and Hinnant affidavits. (Id. ¶¶ 2, 4, 11, 12, 13-16; Hinnant Aff. (DE 83-4) ¶¶ 11-12). These rates are also consistent generally with rates claimed in other cases involving corporate lawyers in this district. See, e.g., Capps v. Newmark S. Region, LLC, No. 5:18-CV-133-FL, 2021 WL 1876130, at *5 (E.D.N.C. May 10, 2021) (collecting cases, with associate to partner ranges from $220 to $475 per hour, and centered around $375 per hour).

Therefore, upon consideration of additional factors, the court finds no basis for further reduction or limitation of the attorneys' fees and expert fees attributable, as limited herein, to work performed on claims by and against Raeis. Accordingly, the court awards $164,964.49 in attorneys' fees and costs to Circle K against Raeis, and $61,279.40 in expert fees to Circle K against Raies, for an aggregate award of $226,243.89 to Circle K against Raeis.

## CONCLUSION

Based on the foregoing, Circle K's motion for attorneys' fees (DE 82) is GRANTED IN PART and DENIED IN PART as set forth herein. The clerk is DIRECTED to enter an amended judgment awarding Circle K $164,964.49 in attorneys' fees and costs against Raeis, and $61,279.40 in expert fees against Raies, for an aggregate award of $226,243.89 in fees and costs to Circle K against Raeis.

SO ORDERED, this the 18th day of April, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge